**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON**

**CIVIL ACTION NO. 11-378-KKC**

**ROBERT R. JONES, JR.**                                                               **PLAINTIFF**

**V.**               **MEMORANDUM OPINION AND ORDER**

**MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY**                              **DEFENDANT**

\* \* \* \* \* \* \* \* \* \* \*

This matter is before the court upon cross-motions for summary judgment on Robert Jones's appeal of the Commissioner's denial of his applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The court will grant the Commissioner's motion (R.12) and deny Jones's motion (R.9) because substantial evidence supports the administrative decision.

At the time of his applications for DIB and SSI, Jones was a 38-year-old male with a GED. AR 159, 161. He had prior work experience for a local city government working on blacktop and snow removal and some prior experience as laborer and farmer. AR 34-35. He alleged disability beginning on April 1, 2004 (later amended to August 23, 2006), due to sleep disorder, arthritis, bulging discs in the spine, chronic pain, and neuropathy. AR 37. Jones filed claims for DIB and SSI on March 17, 2008. *See* AR 11, 159, 161. These claims were denied initially on June 27, 2008, and upon reconsideration on September 24, 2008. AR 11. An impartial vocational expert testified at the hearing held on February 18, 2010. Thereafter, Administrative Law Judge ("ALJ") Katherine Wisz determined that Jones was not disabled. AR 11-18.

1

Under the traditional five-step analysis, *see Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994); *see* 20 C.F.R. § 404.1520 (1982), ALJ Wisz determined that Jones had not engaged in substantial gainful activity since April 1, 2004, the alleged onset date, AR 13; that he had severe impairments, including obstructive sleep apnea, polymyositis, hypertension, chronic neck and back pain, and obesity, *Id*; that his impairments or combination of impairments did not meet or equal one of the listed impairments, AR 14; that he had the residual functional capacity ("RFC") to perform a range of light work with some limitations, AR 14-15; and that he could not return to his previous employment but that jobs existed in the national economy that he could perform such as booth cashier, parking lot attendant, laborer/hand packer, AR 17. The ALJ thus denied his claims for DIB and SSI on June 17, 2010. AR 11-18. The Appeals Council denied Jones's request for review on October 21, 2011, AR 1-3, and he commenced this action.

The court also notes a prior request for benefits in 2005. That previous matter was adjudicated by ALJ Roger Reynolds who determined that Jones had severe impairments of mild obesity, chronic neck and low back pain secondary to degenerative disc disease, history of deep vein thrombosis, and sleep apnea. After a hearing was held in that case, the ALJ determined that Jones was not disabled in a decision dated August 22, 2006.

Jones challenges the ALJ's ruling on the following grounds: (1) that the ALJ improperly applied the rule from *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837 (6th Cir. 1997); and (2) the ALJ erred in failing to consider Jones's limited resources and inability to afford medical treatment in evaluating the medical record as whole.

In his first issue, Jones argues the ALJ improperly relied on the *res judicata* application of *Drummond* in making his RFC determination because changed circumstances existed in the

medical record. Jones argues that since the previous denial of benefits his pain has increased and he has developed other medical problems "causing neuropathy and rheumatologic issues." R. 9 at 3. According to the rule in *Drummond*, an ALJ is bound by the finding of a claimant's residual functional capacity in the absence of new or additional material evidence or changed circumstances. 126 F.3d at 842. The burden is on the Commissioner to prove changed circumstances. *Id*. at 843.

Here, the ALJ specifically stated he was adopting the prior RFC for light work as stated by ALJ Reynolds in the August 2006 decision pursuant to *Drummond* and SSR 98-4(6). *See* AR 14. The RFC finding at step four reads:

> The claimant has the residual functional capacity to perform a range of light work as defined in 20 CFR 404.1567(b) and 416.967(b) as follows: lift, carry, push, and pull up to 20 pounds at a time; stand and walk for six hours in an eight-hour workday; sit for six hour in an eight-hour work day, but needs to be able to change from sitting to standing at one hour intervals; can never climb ladders, ropes, or scaffolds; can only occasionally climb ramps or stairs; cannot operate foot controls; cannot balance; must avoid all exposure to commercial driving, unprotected heights, industrial hazards such as moving machinery, and concentrated vibration. AR 14.

Thus, a comparison between circumstances existing at the time of the prior decision and circumstances existing at the time of review is necessary.

The record reflects that in 2005 Jones sought treatment from a pain clinic for complaints of chronic low back, neck, hip and right leg pain. AR 102 (ALJ Reynold's decision dated August 22, 2006). He was diagnosed with lumbar degenerative joint disease but it was noted that he had no difficulty with daily living activities and only mild tenderness of the lumbar spine. *Id*. (citing Exhibit 6F). ALJ Reynolds determined that his allegations of pain were not supported by the medical record stating that there were no x-ray reports, MRI or CT scans in the record.

AR 105.  In addition, the ALJ noted that his treating physician Jackson noted that he could do his usual duties and no physicians opined that he was disabled for all work activity.  *Id*.

In the current case, ALJ Wisz discussed the medical evidence in the record and found little significant change in his condition.  Records from the Pain Treatment Center in October 2006 indicate pain but his "gait and station described within normal limits" in January and June 2007.  AR 15 (citing Exhibit B4F).  Jones was seen in the emergency room in 2008 for pain and leg swelling and Dr. Muhammad stated he was "most likely suffering from peripheral neuropathy[.]"  *Id*. (citing Exhibit B5F).  Jones was seen by treating physician Dr. Michael Geile who diagnosed him with polymyositis but discussed that he was stable on treatment with prednisone.  *Id*. (citing Exhibit B6F and B8F).  Ultimately the ALJ concluded that the claimant's daily activities, such as caring for his infant grandson, were inconsistent with the degree of disability alleged.  AR 16.

State Agency reviewing physicians also support the ALJ's decision.  For example, Dr. Swan indicated that the MRI and CT evidence showed no evidence of degenerative change in the lumbar discs and that lab tests for various rheumatological conditions were negative.  AR 390.  It is apparent that the record does not support Jones' assertions that his condition deteriorated or significantly changed.  Thus, the ALJ was bound by the previous determination by ALJ Reynolds in 2006 limiting Jones to a range of light work in making his RFC determination.

In his second issue, Jones argues that the ALJ should have considered Jones' inability to afford medical treatment.  The ALJ is required to consider the claimant's reasons, including his ability to afford treatment, for failing to pursue regular treatment.  *See* SSR 96-7p.  The ALJ did not err by failing to take into consideration Jones' lack of financial resources in assessing his credibility.

4

Although Jones testified that he didn't go to the doctor regularly because of his outstanding medical bills to UK Hospital, AR 41, there is nothing in the record to indicate that he tried to obtain medical care or even his medications at little or no cost. In fact, the evidence shows that he was treated fairly regularly. He sought treatment at the Pain Treatment Center in October 2006 for pain in his lower back and right leg (Ex. B4F) and again in January and June 2007. AR 15. He presented to the emergency room in December 2007 for pain and swelling in his legs and again in March 2008. Dr. Tariq Muhammad noted "good range of motion in upper and lower joints," AR 348 (Ex. B5F), and prescribed Neurontin and prednisone for his pain. Further, he was able to receive treatment from Dr. Michael Geile in January 2008 and April 2008 who noted that his pain appeared to be managed by treatment of prednisone. *See* Ex. B6F. Jones testified that he sought treatment from Geile and that the prescribed prednisone helped his swelling and pain. AR 42. The medical evidence does not support his argument that gaps in his treatment were due to an inability to pay for care.

Without more, the court will not attribute the lack of extensive medical evidence to an inability to pay for treatment that warrants a different conclusion in this case. *See Gooch v. Sec'y of Health & Hum. Servs.*, 833 F.2d 589, 592 ("It is doubtless true that a more affluent patient might have obtained a more detailed medical record, but it does not necessarily follow that such a record would have compelled the conclusion that the claimant was disabled."). Thus, the ALJ properly considered the record before him and his ability to afford medical treatment in addressing Jones' credibility.

The ALJ properly applied the relevant legal standards and his decision is supported by substantial evidence. Accordingly,

**IT IS ORDERED** that Jones' motion (R. 9) is **DENIED**.

**IT IS FURTHER ORDERED** that the Commissioner's motion (R. 12) is **GRANTED.**

The court will enter a separate judgment.

Dated this 7th day of January, 2013.

Signed By:
*Karen K. Caldwell*
United States District Judge